# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CONWAY JAY TURNBOUGH, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 17-CV-172-GKF-FHM |
| | ) | |
| JASON BRYANT, Warden | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

Petitioner, a state prisoner, filed this 28 U.S.C. § 2254 habeas corpus petition (Doc. 1) to challenge the constitutional validity of his conviction and sentence in Craig County District Court, Case No. CF-2006-33. In response, Respondent filed a motion to dismiss the petition as time barred (Doc. 5), along with a supporting brief (Doc. 6). Having reviewed Respondent's motion and brief, and Petitioner's response to the motion (Doc. 9), the Court finds that Respondent's motion shall be granted and that the petition shall be dismissed with prejudice as time barred.

## *BACKGROUND*

In 2006, the state charged Petitioner in Craig County District Court, Case No. CF-2006-33, with three counts of Lewd Molestation, in violation of OKLA. STAT. tit. 21, § 1123(A)(5)(f). Doc. 6-1 at 1. The State alleged, in all three counts, that Petitioner molested his step-daughter, F.O. *See* Doc. 6-2 at 3-5. In September 2007, at the conclusion of a two-day trial wherein both F.O. and Petitioner testified, the jury found Petitioner guilty of the lesser-included offense of Indecent Exposure, in violation of OKLA. STAT. tit. 21, § 1021(A)(1), on Count 1; not guilty on the Lewd Molestation charge contained in Count 2; and guilty on the Lewd Molestation charge contained in Count 3. Doc. 6-1 at 1, 3; Doc. 6-3 at 1. Pursuant to the jury's recommendations,

the state district court imposed a 2-year prison sentence and a fine of $3,500 on Count 1 and a consecutive, 20-year prison sentence on Count 3. Doc. 6-1 at 1.

Petitioner filed a direct appeal with the Oklahoma Court of Criminal Appeals (OCCA). *Id.* Petitioner alleged that (1) he was denied due process because the trial court omitted a jury instruction, (2) the evidence was insufficient to support his convictions, (3) he received an excessive sentence, and (4) cumulative error deprived him of a fair trial. *Id.* at 2. The OCCA affirmed the judgment and sentence on December 22, 2008. *Id.* at 1, 5.

On February 12, 2016, Petitioner applied for post-conviction relief in the District Court of Craig County. Doc. 6-2. In his application, Petitioner asserted five propositions of error but essentially advanced two claims: (1) trial counsel was ineffective, and (2) appellate counsel was ineffective for failing to raise an ineffective-assistance-of-trial-counsel claim on direct appeal. *See id.* at 2-23. The state district court denied relief on July 14, 2016. Doc. 6-3. By order filed November 30, 2016, the OCCA declined to exercise jurisdiction over Petitioner's untimely appeal from the district court's order denying post-conviction relief. Doc. 6-4.

Petitioner filed the instant federal habeas petition on April 3, 2017. Doc. 1 at 1.

### *ANALYSIS*

Petitioner alleges that he is entitled to federal habeas relief on one ground: his trial counsel was ineffective for failing to "present the exculpatory testimony" from five witnesses who would have testified that that the victim in this case—Petitioner's step-daughter, F.O.—had a motive to lie about Petitioner's conduct and falsified her allegations against him. Doc. 1 at 5; *see also* Doc. 6-2 at 3 n.2.

2

Respondent contends that Petitioner's habeas corpus petition is time barred under 28 U.S.C. § 2244(d), and that Petitioner is not entitled to either statutory or equitable tolling. Doc. 6 at 1-3.

In response to the motion to dismiss, Petitioner asserts that he is "actually innocent," and that he is therefore entitled to the equitable exception to § 2244(d)'s one-year limitation period that was recognized in *McQuiggin v. Perkins*, 569 U.S. 383, 133 S. Ct. 1924 (2013). Doc. 9 at 1-4.

## A.     Petitioner's § 2254 petition is time barred.

Under the Antiterrorism and Effective Death Penalty Act (AEDPA) a person in custody under judgment of a state court must file his or her § 2254 habeas petition within one year of the "latest of" four specified dates. 28 U.S.C. § 2244(d)(1).   The relevant date here is the one specified in § 2244(d)(1)(A): "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."[1]

Petitioner challenges the judgment entered against him in Craig County District Court, Case No. CF-2006-33.   Petitioner sought direct review of his convictions and sentences, and the OCCA affirmed the same on December 22, 2008. Doc. 6-1.   Petitioner had 90 days thereafter, or until March 23, 2009, to file a petition for writ of certiorari with the United States Supreme Court. *See* Sup. Ct. R. 13(1) (providing that petition for writ of certiorari must be filed "within

---

[1] Though Respondent generically refers to § 2244(d) throughout his supporting brief, Respondent's untimeliness argument is clearly based on the date specified in § 2244(d)(1)(A). *See* Doc. 6 at 1-2.   And, in his response to the motion to dismiss, Petitioner does not suggest that one of the other three dates specified in § 2244(d) apply in his case. Doc. 9.   Thus, the Court considers the timeliness of the petition only under § 2244(d)(1)(A).

90 days after entry of the [state-court] judgment").[2]  Because Petitioner did not seek a writ of certiorari from the Supreme Court, *see* Doc. 1 at 3, his judgment became final on March 23, 2009, when his time to do so expired. *See Locke v. Saffle*, 237 F.3d 1269, 1273 (10th Cir. 2001) (explaining that when petitioner does not file petition for writ of certiorari with Supreme Court, conviction becomes final when time to file such petition expires).   Thus, Petitioner's one-year period to file his habeas petition began to run the next day, on March 24, 2009, and expired on March 24, 2010. *See* Fed. R. Civ. 6(a)(1)(A) (excluding day of triggering event from time computation for period stated in days); *United States v. Hurst*, 322 F.3d 1256, 1261 (10th Cir. 2003) (holding that Fed. R. Civ. P. 6(a) applies in computing AEDPA's one-year limitation period).

Petitioner filed his habeas petition over seven years later, on April 3, 2017. Doc. 1 at 1. Thus, Petitioner's habeas petition shall be dismissed as time barred unless he can demonstrate either (1) that he is entitled to statutory or equitable tolling, or (2) that he has a tenable claim of actual innocence.

**B.    Petitioner is not entitled to statutory or equitable tolling of AEDPA's one-year limitation period.**

Petitioner does not assert, either in his petition or in his response to the motion to dismiss, that he is entitled to statutory or equitable tolling.   *See* Docs, 1, 9.   And, for the following reasons, the Court agrees with Respondent that neither type of tolling is available to Petitioner.

---

[2] Petitioner's time to file a petition for a writ of certiorari began to run on December 23, 2008, the day after the OCCA issued its opinion. *See* Fed. R. Civ. 6(a)(1)(A) (excluding day of triggering event from time computation for period stated in days).   The last day of Petitioner's 90-day period was March 22, 2009. But because that day fell on a Sunday, Petitioner had until March 23, 2009, to file his petition.   *See* Sup. Ct. R. 30(1) (providing that if last day of period falls on Sunday, period continues to run until the end of the next day that is not a Saturday, Sunday or legal holiday); Fed. R. Civ. P. 6(a)(1)(B) (same).

First, AEDPA's one-year period is statutorily tolled for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).   But "[o]nly state petitions for post-conviction relief filed within the one year allowed by AEDPA will toll the statute of limitations." *Clark v. Oklahoma*, 468 F.3d 711, 714 (10th Cir. 2006).   Here, Petitioner did not apply for state post-conviction relief until February 12, 2016, nearly six years after AEDPA's one-year limitation period expired. Doc. 6-2.   Thus, the Court finds that Petitioner is not entitled to statutory tolling.

Second, equitable tolling is available only "in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). An appropriate case is one that involves "rare and exceptional circumstances." *Garcia v. Shanks*, 351 F.3d 468, 473 n.2 (10th Cir. 2003).   A petitioner seeking equitable tolling must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing," *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). As Respondent points out, Petitioner does not even attempt to make—let alone make—the requisite showings to obtain equitable tolling.   Thus, the Court finds that Petitioner is not entitled to equitable tolling.

**C.      Petitioner does not present a tenable claim of actual innocence that would support an equitable exception to AEDPA's one-year limitation period.**

Petitioner's sole effort to excuse the untimeliness of his petition is through his assertion that he is "actually innocent." Doc. 9 at 1.   Based on this assertion, he seeks the equitable exception to AEDPA's one-year limitation period that was recognized in *McQuiggin v. Perkins*, 569 U.S. 383, 133 S. Ct. 1924 (2013). *Id.* at 1-4.   In his response, Petitioner also requests an evidentiary hearing. *Id.* at 4.

In *Perkins*, the United States Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass" to overcome the expiration of AEDPA's statute of limitations and permit a federal habeas court to review the merits of an untimely habeas claim. *Perkins*, 133 S. Ct. at 1928; *see also Doe v. Jones*, 762 F.3d 1174, 1182 (10th Cir. 2014) (noting that *Perkins* held "that a 'credible showing of actual innocence' provides an outright equitable *exception* to AEDPA's statute of limitations"). But the Supreme Court emphasized that this equitable exception "applies to a severely confined category [of] cases," *Perkins*, 133 S. Ct. at 1933, and that "tenable actual-innocence gateway pleas are rare," *id.* at 1928.

The Supreme Court explained that "[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Id.* at 1936 (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)). The "*Schlup* standard is demanding." *House v. Bell*, 547 U.S. 518, 538 (2006). "Simply maintaining one's innocence, or even casting some doubt on witness credibility, does not necessarily satisfy this standard." *Frost v. Pryor*, 749 F.3d 1212, 1232 (10th Cir. 2014). Rather, "[t]o be credible [a claim of actual innocence requires] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. Ultimately, to pass through the *Schlup* gateway, a petitioner must "demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." *House*, 547 U.S. at 538.

And, while a petitioner seeking to pass through the gateway need not "prove diligence" in presenting new evidence of actual innocence, any "[u]nexplained delay in presenting new evidence bears on the determination [of] whether the petitioner has made the requisite showing." *Perkins*, 133 S. Ct. at 1935. Thus, "a federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown." *Id.* at 1928.

Here, to support his actual-innocence gateway claim, Petitioner presents four affidavits from his relatives. *See* Doc. 1 at 5; Doc. 9 at 2. In the first affidavit, dated January 29, 2016, Petitioner's niece, L.M., states that she disclosed in November 2005 that she had been molested by a cousin, *id.* at 16, 18; that she discussed the details of the molestation with F.O. "[a]bout a week before the Christmas parade," *id.* at 16; and that "a couple of months later" when she learned that F.O. "had made up allegations against [Petitioner]," she told her grandfather (Petitioner's father) that she believed F.O. fabricated the allegations using the details that L.M. shared with F.O. about L.M.'s experience, *id.* at 17. L.M. further states in her affidavit that her grandfather told her she might have to testify at Petitioner's trial, and that she was willing to do so, but that trial counsel never contacted her. *Id.* at 17-18.

In the second affidavit, dated January 20, 2016, Petitioner's son, Mark Turnbough, states that he spoke with trial counsel before Petitioner's trial, and that had trial counsel prepared him to do so, he would have testified that he had personal knowledge that F.O. engaged in sexual acts with two of his cousins when they "were younger," *id.* at 19, 21; that Petitioner was upset when he found out that F.O. was engaging in such acts; that Petitioner was sometimes verbally and

physically abusive toward F.O.'s mother; and that F.O. likely made false allegations against Petitioner so that Petitioner would "stay away from her mother," *id.* at 19-20.

In the third affidavit, dated February 1, 2016, Petitioner's nephew, Michael Koontz, states that when he was about 12 years old he and his older brother engaged in sexual acts with F.O., that he disclosed this behavior to his mother several months before Petitioner's arrest in this case, and that Petitioner was extremely upset when Koontz' mother told Petitioner about F.O.'s behavior. *Id.* at 22-24. Koontz further states in his affidavit that he believes that F.O. made up the allegations against Petitioner, and that he would have been willing to testify at trial had trial counsel asked him to do so. *Id.* at 23-24.

Finally, in the fourth affidavit, Petitioner's sister, Kayleen Harrison, states that she spoke with F.O.'s mother "a couple days after" Petitioner's sentencing hearing. *Id.* at 25. According to Harrison, F.O.'s mother started to cry and told Harrison that F.O. "had warned her [mother] and told her that if she hadn't left [Petitioner] by the time her Income Tax check came, [F.O.] would make sure that [Petitioner and her mother] weren't together." *Id.* at 25. Harrison further states in her affidavit that trial counsel never attempted to contact her. *Id.* at 26.

These four affidavits, collectively, contain statements that tend to support Petitioner's assertions that F.O. may have had a motive to lie about Petitioner's conduct and may have fabricated her allegations against him. Further, three of the affidavits contain statements indicating that trial counsel never contacted the affiants. These statements lend credence to Petitioner's claims that trial counsel (1) failed to investigate his theory that F.O. made false allegations and (2) failed to present available witnesses in support of that theory.

But the current question before the Court is not whether Petitioner has demonstrated, under *Strickland v. Washington*, 466 U.S. 668 (1984), that trial counsel's allegedly deficient

performance resulted in prejudice.   To satisfy *Strickland*'s prejudice standard, Petitioner would have to show "a reasonable probability that, absent [trial counsel's] errors, the factfinder would have had a reasonable doubt respecting guilt."   *Schlup*, 513 U.S. at 333 (quoting *Strickland*, 466 U.S. at 695).   Instead, the current question before the Court is whether Petitioner has demonstrated "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."   *Perkins*, 133 S. Ct. at 1935 (quoting *Schlup*, 513 U.S. at 327). The Supreme Court has described this latter standard—i.e., the standard Petitioner must satisfy before the Court can reach the merits of his untimely claim—as "higher than that required" to show prejudice under *Strickland*. *Schlup*, 513 U.S. at 332-33.

In evaluating whether Petitioner has satisfied this higher standard, particularly in the context of Petitioner's request for an evidentiary hearing, the Court "must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial" and "may consider how the timing of the submission [of the new evidence] and the likely credibility of [petitioner's] affiants bear on the probable reliability of that evidence."   *Schlup*, 513 U.S. at 332.

Preliminarily, the Court's ability to evaluate the newly presented evidence "in connection with the evidence of guilt adduced at trial," *id.*, is limited because neither party has provided the Court with copies of the trial transcript. Nonetheless, even the limited record before the Court shows that F.O., Petitioner, and at least one of Petitioner's affiants testified at trial. *See* Doc. 6-3 at 2.   Significantly, in his application for state post-conviction relief Petitioner asserted the same claim that he presents in the instant habeas petition—namely, that had his trial counsel been more thorough, counsel "would have learned that the alleged victim, F.O., had motive to fabricate the allegations against [Petitioner]." Doc. 6-2 at 3. In denying Petitioner's application

for post-conviction relief, the state district court noted that "both the [Petitioner] and his son,

Mark Turnbough, testified and were given ample opportunity on cross-examination to explain

why [F.O.] may have lied." *Id.* The state district court further observed that while the trial

court did not admit evidence of F.O.'s past sexual conduct, the trial court did permit Petitioner to

"introduc[e] his theory that the victim's testimony was revenge for disciplinary measures

practiced upon [her] by [Petitioner]." *Id.* at 2. Notably, the state district court's observations

about the evidence adduced at trial were based on that court's review of "the entire trial

transcript." *Id.* at 1. Based on its review of those transcripts, the state district court reasoned that

Petitioner could not further "question the motive of the victim some 8 years after conviction

when he had [that] opportunity at trial" and both he and his son responded to that opportunity by

testifying only that "there was turmoil in the home and the victim may have wanted to live

elsewhere." *Id.*

In sum, the portion of the record before this Court shows that the jury (1) heard from both

Petitioner and his son that F.O. may have had a motive to fabricate her allegations against

Petitioner, (2) acquitted Petitioner on one count, and (3) found him guilty of a lesser-included

offense on a second count. Based on this record, the Court finds that the jury seriously

considered Petitioner's theory of defense and F.O.'s testimony in reaching its verdict. The

Court is not persuaded that Petitioner's newly presented evidence to support that same theory of

defense—i.e., statements from his son who testified at trial and similar statements from three

additional family members who did not testify at trial—demonstrates "that it is more likely than

not that no reasonable juror would have convicted him in light of the new evidence." *Perkins*,

133 S. Ct. at 1935 (quoting *Schlup*, 513 U.S. at 327).

Moreover, like the state district court, this Court cannot ignore the timing of Petitioner's submission of his supporting affidavits.   The Court acknowledges that Petitioner's incarceration status may limit his ability to research his legal claims and obtain supporting affidavits. But all four affidavits contain statements regarding the affiants' knowledge of events that occurred either before Petitioner's arrest, before his trial, or within a few days after his sentencing hearing. And all four affidavits are from family members who appear to support Petitioner's efforts to challenge his convictions.   Yet, inexplicably, none of those family members came forward with signed affidavits until January and February 2016, presumably so that Petitioner could submit the affidavits with his February 12, 2016, application for state post-conviction relief. *See* Doc. 6-2.

Petitioner recognizes that the timing of his assertion of actual innocence is relevant to the Court's assessment of his actual-innocence gateway claim. Doc. 9 at 2-3.   In that respect, Petitioner argues that he "has been asserting his innocence . . . with some frequency, since his direct appeal." *Id.* at 3. But his "frequent" filings were made in state court between 2014 and 2016. *See id.* Petitioner asserts his actual-innocence gateway claim so that he can obtain review of his underlying claim that trial counsel was ineffective.   But the facts supporting his underlying claim would have been known to Petitioner, at the latest, in 2007 when he witnessed trial counsel's performance with respect to failing to investigate and present his theory of defense and failing to call the witnesses Petitioner now asserts were willing to testify at trial. Likewise, Petitioner knew that his appellate counsel had not asserted an ineffective-assistance-of-trial-counsel claim on direct appeal, at the very latest, in 2008 when the OCCA affirmed his convictions.   Yet, Petitioner did not obtain supporting affidavits from his family members or seek state post-conviction relief based on his ineffective-assistance-of-counsel claims until 2016.

Petitioner does not account for this delay other than by pointing to his "frequent" filings that began in 2014.

As noted, Petitioner need not prove he was diligent in presenting his new evidence to support his request for an equitable exception to AEDPA's time bar. *See Perkins*, 133 S. Ct. at 1935. But the timing of his submission of such evidence is relevant to the Court's assessment of both (1) the probative value of the newly presented evidence and (2) the ultimate assessment of whether Petitioner has convincingly demonstrated "that it is more likely that not that no reasonable juror would have found [P]etitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327; *see also Perkins*, 133 S. Ct. at 1936. Here, Petitioner's unexplained delay in presenting evidence from four family members relating to their knowledge of F.O.'s motive to lie, their beliefs that she falsely accused Petitioner, and their knowledge that they had not been contacted by trial counsel or called to testify at trial—i.e., information known to those family members before, during, or shortly after Petitioner's 2007 trial—"seriously undermine[s] the credibility of [his] actual-innocence claim." *Perkins*, 133 S. Ct. at 1936.

Because the Court is not persuaded that Petitioner has presented a tenable claim of actual innocence, the Court concludes that Petitioner is not entitled to an equitable exception to AEDPA's one-year limitation period.

### *CONCLUSION*

Petitioner's habeas petition is untimely under § 2244(d)(1)(A), and Petitioner has not demonstrated that he is entitled to statutory or equitable tolling of, or an equitable exception to, AEDPA's one-year limitation period. Consequently, the Court grants Respondent's motion and dismisses the petition for writ of habeas corpus with prejudice as time barred. As a result, Petitioner's request for an evidentiary hearing is moot.

**Certificate of Appealability**

Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When, as here, the district court dismisses a habeas petition on procedural grounds, the petitioner must make this showing by demonstrating both "[1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because reasonable jurists would not debate the correctness of the Court's procedural rulings that the petition is time barred and that Petitioner has failed to demonstrate that he is entitled to equitable relief from AEDPA's time bar, the Court denies a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.      Respondent's motion to dismiss the petition as time barred (Doc. 5) is **granted**.

3.      The petition for a writ of habeas corpus (Doc. 1) is **dismissed with prejudice**.

4.      Petitioner's request for an evidentiary hearing is **denied as moot**.

5.      A certificate of appealability is **denied**.

6.      A separate Judgment shall be entered in this case.


        **DATED** this 15th day of November, 2017


                                        GREGORY K. FRIZZELL, CHIEF JUDGE
                                        UNITED STATES DISTRICT COURT